The next case we'll hear this morning is Bills v. Virginia Department of Education. And Ms. Fuller, whenever you're ready, we'll hear from you. What an honor to be here. May it please the court. This case is a case about parents trying to bring the rights of their disabled children under the IDEA and the 504 Rehabilitation Act. When their children were placed in virtual learning, they were not permitted their rights under IDEA and the 504 Act to receive their services and accommodations as written in the IEP. Essentially, the IEP is a legal document, which is a contract. Before we get into the legal, let me just get the structure, if I understand it correctly. We had COVID probably blooming in February of 2020. And in March of 2020, they closed the schools and sent the kids home because of the enormous risk from COVID. I mean, it was actually risking lives and killing people regularly and put all the students on virtual learning, right? Yes, Your Honor. And they did not segregate out children with disabilities or anything. They treated them all the same. Yes, Your Honor. Sending them home. Is that right? Yes, Your Honor. And your argument is basically that the effect of that would be different for disabled children because of the nature of the learning process. Yes, Your Honor. Although the situation of all students was the same with respect to virtual learning, and we do not dispute that it was appropriate for them to be placed in virtual learning, what our argument is is that there was a disparate impact on the children. But aren't you seeking perspective relief? I thought you wanted an injunction and declaratory judgment saying if this ever happens again, don't do this. Absolutely. It's not a matter of whether the children can be placed in a virtual setting. We would argue that that is a change in placement where that impacts the provision of their services and accommodations under the IEP. So what kind of an injunction do you want? We would argue that once you change a student's placement, that there's an invocation of stay put rights under IDEA where they would be entitled to receive the services legally that they should be receiving in person. So that you can't just say, just because we have an IEP in place for a virtual placement, that you are therefore getting the same services as legally required through the IEP. Actually, the OCR, the Office of Civil Rights. Your brief says this is a case seeking declaratory and injunctive relief to enjoin them from denying these rights. I guess my question is, why is that a justiciable claim now that everyone is back in school? We would argue that this is not a moot issue. It seems like it's both moot and you don't have standing because I don't understand what ongoing, can you explain to me why there is standing for prospective relief in this case? Yes, Judge Harris. In League of Women Voters v. S.C. Andino, which was from this Fourth Circuit, the court said that voluntary secession doesn't apply if there's no guarantee that it will not recur. That's a mootness case and I guess I wanted to start with standing. What's your concrete current injury? The current injury is that whenever the school district decides that there can be a virtual placement. That's not current. That's something that might happen in the future. It is still recurring because what happens is due to staffing shortages or due to a student illness where perhaps they go on home-bound or home-based instruction. That's not the facts of this case. Basically, you're grounding your facts of this case on the order to close schools in light of the pandemic and that they were sent home on virtual. Now they're all back and the question now is what is the basis for forward-looking relief? I mean, you have to assume there's going to be another pandemic and it seems to me that's pretty speculative to justify an injunction. I would agree with that point about another pandemic. However, this comes up every day. It doesn't come up every day. That's not your claim that if one day the schools shut down because there's a broken pipe. That's not your claim. No, we say per honig that when there's a change in placement of more than 10 days where they change the – let me go back first to AW, XREL, Wilson versus Fairfax. Let's stick with your complaint first. Your complaint is based on closing the schools by reason of COVID. Yes. On the basis of those facts, you're seeking an injunction. Yes. And the question I have is don't we have to assume that we're going to have another pandemic such as provide need for an injunction at this time? Respectfully, Judge Niemeyer, I would say that this is something that comes up every day. If there's a staffing shortage, they're provided virtual services. You mean what you've alleged in the complaint comes up every day? Yes, Your Honor. But what you allege in – well, I don't see that. You allege in the complaint that the COVID is the reason they closed. That's why I wanted to go over the facts initially with you. We can't just seek advisory opinions or try to correct societal conduct in a general sense. We have to have real cases. We have to have real injury. And we have to have – in injunction, we have to have projected – we have to have injury projected in the – that's not speculative. I absolutely agree that this is not speculative, Your Honor, that a change in placement – ultimately, this comes to a change in placement, which is – No, that's too general. That's way too general. If you want to bring a complaint, if you want to bring a case about a staffing shortage that allegedly deprived your clients of the right to their placement, bring that case. But that's not this one. Well, that's why I was bringing up A.W. X. Rel. Wilson, because that's saying that location – a change in location does not necessarily determine the change in placement. It is where the student is still receiving their services determines a change in placement. Today, they're receiving them as they were before the pandemic, right? I cannot say – I cannot speak to that because I do not know if the school district is providing virtual services. My point is the pandemic sanction is over. The students have returned to class, right? That does not make it moot. I'm not talking about moot. I'm talking about why we need an injunction. Because the student – excuse me – the school districts and the veto can determine that they're going to go to virtual services, virtual education whenever they want. So this is something that's going to impact students indefinitely, but also these students – So you want us to legislate essentially? No, I would – They would have to do something. We would then have to say they have to do something in light of that. And the question – we'd have to determine how long is that? Is it for a day? Is it for two days? I mean, this is nothing about what your complaint is about. Ultimately, the complaint is asking the court to determine that when there is a change in placement, that the services that are guaranteed under their IEPs and IDEAs should be provided as written. The complaint wants you to – which you won't reinstate it – wants to declare the defendants to be racketeers. We will concede that, Your Honor. We will concede that argument. You've got two counts on racketeering under the RICO Act. You want punitive damages, attorney's fees, assignment of a RICO spatial monitor to audit the school systems. You pick out two of the – or six of the main school systems in Virginia and throw them in there as defendants. I believe at the time that this was filed, there was concern about the use of the special education funds. But we are conceding that – we're conceding on RICO. We're not really pursuing that claim. At what point in time did you say? Initially, when we filed the complaint, there was concern – Have you ever heard of Rule 11? You probably know it much better than I do, sir. But you say you're conceding on the RICO's counts, or two counts. Yes. Counts 9 and 10. Well, you've got eight counts ahead of that. We're – yes. Just a minute. On the RICO counts, are you withdrawing those counts? Yes. Why haven't you done so? That is something we can pursue. You've had how many? Three years or more? You didn't tell that Judge Moon. Actually, you were told by a judge in New York that those claims reeked of bad faith and contrivance. And it seemed to me that if you then file another lawsuit, or you've filed multiple lawsuits on this very same thesis, that courts should start sanctioning that type of thing. Ultimately, we're concerned about the ability of the disabled students to receive their services and accommodations. So RICO is the approach you think is appropriate? Your Honor, today I'm here to defend disabled students and not so much RICO. You are – you're here to try to get this complaint reinstated. And the complaint alleges, as I said, and I started at the bottom, 9 and 10, RICO charges. Racketeers. You're declaring the school boards a bunch of racketeers. I believe that if they were receiving federal funds to provide services that they did not provide, however, I do concede that we did not meet the requirements under the statute. But I think the concern is just that the students did not receive the services that they were getting federal funds for. Well, what about the lawyers that had to defend this to get to this stage? That's what the Rule 11's about. I actually don't know those lawyers, and I'm here today just – The lawyers are right there. And they've spent money defending this case below and above and face these charges, which are extravagant. I guess you must agree on that at this point, but I don't know how many judges have told you. How many of these cases have you filed around the country? I believe that initially the concern was – How many cases have you filed? I can't answer that with – An estimate. More than a half dozen? I am newer to this firm than when this was initially filed, so I can't answer that intelligibly. Are you aware of the district court judge in New York that warned you about the frivolousness of your claim? I don't believe that the IDEA and 504 claims are frivolous because the OCR did find that they – How about the RICO claims? I really believe that since that's conceded, the more important focus is the IDEA and the 504 claims. Can I ask you, so is – are there other parts of your complaint that we can put to one side? Or should we only be focusing on IDEA and 504? Like, I don't – I'm sort of not getting this. Like, is there anything else you'd like to withdraw? You've got ten claims. We're done with two. You've withdrawn two. I assume punitive damages goes away with the RICO thing. Well, at this point, because the – You have two constitutional claims and suits under 1983 for violation of civil rights. You want to drop those? Under the Equal Protection Clause and the Due Process Clause of the 14th Amendment. We will concede RICO. At this point – What about the constitutional discrimination which doesn't recognize discriminatory impact? We would say that there is – Do you have a case for that? We would say that there is disparate impact. Right, but disparate impact isn't a claim under the Equal Protection Clause. Do you have a claim that says you violate the Equal Protection Clause by causing a disparate impact? We would say that their substantive and procedural rights were violated. Do you have a case that supports that theory? I can get that in a supplemental brief. You don't have a case now that you know of? I would have to get that in a supplemental brief. Well, I'm not asking for a supplemental brief. The question is, at this point, you're advancing a claim under the Constitution for discrimination, and you don't have a case to support the claim. Well, there is the case – I think you might be out – you say you don't know what Rule 11 is. But that's Count 7 and 8, the so-called constitutional claims. I would like to mention Charles H. et al. v. District of Columbia that did afford a preliminary injunction for the 40 incarcerated children that were not receiving in-person instruction during COVID, where they were granted in-person instruction and services in the jail. Under the Equal Protection Clause? That was a good question. It's an idea.  So, primarily our focus is idea, because this is something that is – Count 1. Yes. And you've got nine more. Yes. That you allege against these persons, six or eight people, plus six county school boards, of whatever – how many defendants you got in here? We would just like – my time is up. Would you like me to stay for rebuttal, or would you like me to answer that question? Answer the question.  Our concern is that when the rights of these children were violated, that they had disparate impact that caused irreparable harm in terms of developmental delays. These are things that are appropriate for an injunction. We understand your claim and what your purpose and cause is. The question is, why didn't you just stick with idea? That's the statute that gives rights for special education, and you could argue that the state improperly addressed their interest here. You could have done that, of course, if you did that. Then you would, of course, have to go through the whole process of working with the educational system, going through their process, administrative process. And, of course, that's where the district court threw you out on this one for failing to go through that process. But the question – let me ask you, are you conceding on any other counts other than eight and nine? I mean, nine and ten? We will concede on everything but idea and 504. I was hoping to address the exhaustion argument, but I can save that for rebuttal if you would prefer. All right. We'll hear from you on rebuttal. All right, Mr. Cafferty. Yes, members of the panel, good morning. John Cafferty for the local school defendants. And I'd like, if I can, to focus on a couple things and bring a few things to the court's attention. One, when you look at an answer to your question about were the students back to in-person learning at the time this case was filed, the complaint answers that question, and the answer is yes. If you look at Joint Appendix 29 through 33, I think it is, the students – and there are four students here. It was sort of styled as a class action, but we're talking about four students from four different school divisions, actually six different school divisions because they moved around a bit, large school divisions like Loudon, smaller school divisions like Amherst. They went back at different times. They were all back in school in person by March 2021. This complaint was filed in October, I think October 12, 2021. They were all back to school by that point. And one other thing that had not happened at that time is that the administrative hearing process hadn't been completed. In fact, it hadn't been started for some of the students, but there's no dispute about the fact – I mention that in part because it's been a while since we had done the briefing in this case, and in the intervening time there have been a couple of developments relative to exhaustion. One of them is your decision in the KI case that makes exhaustion essentially a 12B6 issue instead of a jurisdictional 12B1 issue. We don't need to worry about that here because both in their appellate's brief and really in the complaint, they make clear that the administrative process was not finished. In fact, it had barely even started at the time this complaint was filed. That's important because, as I mentioned, you have four different students. They have different disabilities. One of them has autism. One of them has other health impairment, cognitive disabilities. In different situations, as has been pointed out, what the impact of virtual learning – I mean, this is a claim that you could have in the administrative process. We had many of them. They're finally sort of winding down now. We gave you some of the sites in the court. But this is exactly the kind of case where you would want the plaintiff to exhaust the administrative process, the administrative hearing process. And really, the other important intervening development was the U.S. Supreme Court's decision in the Perez v. Sturgis school district case. So I did want to talk about the applicability of that. That case focuses on – so now we're down to IDEA and Section 504, and I'm not clear about ADA. But in any event, what the court there focuses on, assuming that, like, first under Fry, you have to look and see, is this basically, is the corpus, is the gravamen of these claims the same? And of course it is. The 504 and the IDEA claim, and really even the ADA, they all sit on top of each other factually. So then the question under Perez is, are you asking for any different remedy than you can get under IDEA? That's what 1420 U.S.C. 1415L says. And the answer here is absolutely not. This is not a case – Perez was a case where there was a compensatory damages remedy that was sought. Not the case here. And you've obviously looked at the complaint, which I think starts at the remedy. The complaint is quite lengthy, as you know. The remedies section, I think there are 16 different subparagraphs, starts on page 71 of the joint appendix. And if you go through there, the things that are being asked for, compensatory education, certainly available under IDEA. Attorney's fees available under IDEA. For that matter, in an appropriate case, even things like declaratory and injunctive relief would be available. All the remedies that are sought in this complaint are ones – and of course – What about the nominal damages? Well, the nominal damages, that's – and we get back to punitive damages. Nominal damages is interesting. There is not a – there is – the first thing I would say is nominal damage is not an issue reached or apparently raised in the Perez case. So – Also not raised in the plaintiff's brief on appeal. Well, correct, Your Honor. Or in their letter about Luna Perez. And so what – and then furthermore, what I would say is this Court has not ruled on that. There is not a ton of case law because frankly, the idea of nominal damages or the – you know, this analysis of are the remedies precisely the same, really comes to us only with the Perez case, certainly in this circuit. But to answer your question, if you look at – What are the nominal damages for? I mean, nominal damages are not available for everything. I mean, we recognize, I think, in breach of contract cases. Right. But what is the theory here? Well, the theory – and it would obviously be a plaintiff's theory. But I mean, as I understand it, it would be recognition of the infringement of some right. And if you look at your decision in the G versus – Can you get nominal damages under IDEA? Well, I started to say this Court has not answered that question expressly. Have other courts? Well, the Fifth Circuit in a case called – a 1995 case called Sally versus – I'll find it. The Sally case has approved an award of nominal damages. I will tell you that there's a Ninth Circuit decision from 2012, obviously predates Perez that's to the contrary. In terms of your law, the closest thing we have is the 2003 decision in the G versus Fort Bragg dependent schools case. That's the case, importantly, by which this Court authorized the award of compensatory education. Because that's also something they seek. And if you look at the discussion there, there's a discussion of a couple of federal cases dealing with nominal damages. And what the Court basically makes the analogy to, well, the purpose of nominal damages is to – Justify punitive damages. Well, that's – Or attorney's fees. Well, attorney's fees. If you get nominal damages in a 1983 case, and as a result of that you can get attorney's fees. It's to pick a winner for purposes of attorney's fees. And there's no dispute that attorney's fees are – Could you get attorney's fees under IDEA if the Court determined that the child was not getting faith but didn't award any damage and directed the school to provide a different program? Would a person be a prevailing party and get attorney's fees? That would be for the Court to decide, but I would say – But, I mean, is it authorized under the statute? I would say yes. I would say yes. The Court has significant latitude to – But you have to be suing them individually. Under 1983, you can't get nominal damages if you sue them in their official capacity, but you can under the – if you bring individual action. Fair enough. Does that distinction apply under IDEA? I'm not sure I quite – Naming the public official in their official capacity and in their individual capacity, two different things. Well, I would say for purposes of – for IDEA purposes, there isn't any individual school – There's no individual capacity. Correct. It's all official. Correct. So they normally wouldn't get damages at all in that type of situation. Right, right. And if you look at the – as I said in the Gee versus Fort Bragg case, if you look at that discussion there, they essentially say that the purpose of nominal damages is to assign a winner for purposes – or a prevailing party for purposes of – A fee-shifting provision. For fee-shifting, exactly. But it would be a pretty unfortunate result, I would submit to you, Your Honors, if someone by the expedient of adding a throwaway nominal damages claim could avoid all this administrative apparatus we have to try to develop a record for these cases for the benefit of the court. I see my time is up. All right. I'll yield to my friend from – I understand Mr. Minow or Minot. It's Minot, Your Honors. Minot. But I've been called much worse, so. Sorry. Your Honors, may it please the Court, I'm Jordan Minot. I'm here to represent the Virginia Department of Education and the Superintendent of Public Instruction. I'm joined at some distance by – Could we just, before you get into it, just address this question? It seemed to me that if it's just against officials, we shouldn't be talking about nominal damages, should we? Wouldn't you be immune from that? That's correct, Your Honor. I'll also add to the discussion that, especially with respect to the 1983 context, the Supreme Court in Farrar v. Hobby, which is a 1992 decision, said that an award of nominal damages by itself without compensatory damages was not enough. It was enough to confer prevailing party status for the purpose of 1988, but not enough for attorney's fees under 1988. So nominal damages are different in kind from compensatory damages. In that Supreme Court case, the Court discusses how the award of nominal damages without compensatory damages, in fact, demonstrates that the plaintiff was not able to prove compensatory damage or that they were damaged in a way that could be compensated. So that kind of goes to the nominal damages are treated and should be treated differently from compensatory damages. But your clients are sued under 1983. Is that correct? As far as I understand, that's correct, Your Honor. So he's going to throw all that out. That's right. So my understanding is... You haven't heard anything like that until today. That's correct, Your Honor. The only claim that we believe was conceded before today was the Virginia Human Rights Act claim on JA1353, footnote 1. That's the... Count five. That's correct, Your Honor. That's the preliminary injunction reply brief by plaintiffs. They conceded that. That was the only claim, as we understand it, that supported punitive damages. So as of now, you're sued under 1983 and under RICO. And under counts one and three, which are the IEA. Yeah, but the one she's going to throw out. Or says she's going to throw out. That's our understanding, Your Honor. And so we would... We contend that all of the counts, with the exception of counts one and three, are barred by sovereign immunity with respect to the state defendants. That's true. That was true whether or not they're still alive. That includes the constitutional arguments. I'm sorry, the 1983 claims, the RICO claims. And the state defendants are the Virginia Department of Education and the superintendent of public instruction? That's correct, Your Honor. But they sued Mr. Lane, and he's the former superintendent. That's correct, Your Honor. We've now been through three superintendents of public instruction. So they've been substituted, the others? We first substituted Jillian Vallow, who was the superintendent of public instruction when this case came on appeal. It is now Lisa Coons. Are they all in their official capacity? That's correct, Your Honor. So it wouldn't make any difference with respect to the immunity issue then? That's also correct, Your Honor. I mean, they're additionally barred by sovereign immunity. What you understand is that counts one and three are the open counts that need to be addressed. That's right, Your Honor, and we think that they are barred because they failed to exhaust their administrative remedies. Plaintiffs in their complaint conceded that they had not completed the administrative process at the time that they filed their complaint. In fact, some of them had not started their administrative process by the time they filed their complaint. They argued when they filed their complaint that they needn't exhaust their administrative remedies because doing so would be futile. They argue on appeal that they, in fact, now have exhausted their administrative remedies, and that is sufficient. Neither argument is availing. They were required to exhaust their administrative remedies that were available to them. They failed to do so. Artful pleading by... I'm sorry, they were required to exhaust their IDEA administrative processes. That's correct, Your Honor. They failed to do so, and they cannot... What you want us to do is affirm Judge Moon. That's right, Judge King. We don't have to get into these details as to each count or anything. If we affirm Judge Moon, that takes care of it. Well, what do you understand Ms. Fuller has conceded today? She said she was withdrawing all claims except. I didn't quite hear one and three. Is that Ms. Fuller? That's one and three, right? Judge Niemeyer, that is one and three, yes. Okay, I just wanted to understand that. So the understanding among counsel here in the courtroom is that we should address one and three. That's right, Your Honor. And to Judge King's point, I think that you can exactly follow what Judge Moon did with respect to those counts, which is note that plaintiffs conceded that they did not exhaust their administrative remedies. They do not meet a futility exception. And even post-Luna-Perez, they do not meet the standard that was discussed in the Supreme Court there because they did not plead either compensatory damages and that their punitive damage claim has been conceded. All right. If there are no further questions, we ask you to affirm. Thank you, Your Honor. Mr. Hearn. Good morning. I'm David Hearn on behalf of the Chesterfield and Chesapeake School Boards. In my limited time, I was prepared to address Judge Moon's ruling in the district court below, dismissing equal protection, the due process, and the RICO claims on 12B6. But I understand for the first time today that the appellant's counsel has indicated that the appellants are conceding that. And therefore, in light of that, I believe that Judge Moon's ruling must be affirmed. I'm happy to answer any questions. I'll address anything the court would like me to. But in light of that, I don't know that there's anything to be said. And I'll be happy to cede my time to my colleagues if that would be helpful to the court. Thank you. We'll hear from Ms. Fuller, Marie Buttle. And you're free to, you wanted to talk about exhaustion and so forth, and you're free to do all of that. Thank you. I'd love to talk about exhaustion. So when, I think it was a little bit of a misstatement that we conceded that we failed to exhaust. That was not our argument. We understood you did not concede that. We understood you're withdrawing all the counts except one and three. And one and three were dismissed by Judge Moon based on exhaustion, and you're preserving that point. Yes, absolutely. And I would like to say that I feel there's been a bit of a, not mischaracterization, but under Fred Sturgis, it is defendant that has to prove that the plaintiffs did not exhaust. It is not the plaintiff's burden to prove that. And we also said in our argument that we did not have to exhaust because there was an exception, that because of the stay put requirement under 1415J that we met the requirements for the exception. So the fact that- This is the futility exception? Yes. Okay. Also under futility, I would disagree with my colleague that the hearing officer does not have the ability to grant the injunctive relief that we're requesting. Let me ask you on that question. I think that's an Article III court, but go ahead. Did you have a question? No, I didn't. I just had a snide remark. My question is, we have COVID and we have a situation where these defendants have determined we can't have in-person contact because of the contagiousness. And so they have remote learning for everybody. The question is, what would you expect additionally to be done for persons with disabilities in the remote learning context? Because it seems to me that has to be- If this was ongoing, that would have to be something you would have to address or want, right? So in the individual administrative context, IDEA contemplates that a student who is denied a FAPE, a free appropriate public education, would be able to go to the hearing officer that would get relief in terms of a placement- I'm trying to figure out what- That's exhaustion. I want to find out substantively. We have a person with a disability at home with a computer and it's on the program. But your argument, as I understand it, is that's not enough for persons with disabilities. There has to be something more provided. Is that right? It's not the same if you have physical therapy or occupational therapy or even speech therapy to say that you can provide that virtually without actually being in contact to provide the therapy in person. Okay, that leads to my question now. What would you have wanted them to do? In other words, do all of those require in-person contact? Yes, and we're saying that that was the disparate impact, that just because a teacher can talk to you doesn't mean that a therapist can provide services. I'm trying to stay within the context of the COVID. And so you wanted to have persons visiting these persons with disability even though we had COVID restrictions? Yes, nurses had to provide in-person. Well, nurses were, and they were susceptible. Nurses were being injured too. The real question is we had a pretty serious emergency. These children had developmental delays that will impact them for the rest of their lives because they did not receive in-person. And that was their guarantee under IDEA and the 504. So that's why there was the need for the declaratory relief. Okay, so let's stay with what you're pointing out. You suggest that there could have been visitations to these students by persons to address their needs individually. Yes, and OCR found that. Let me ask my question. And they would be treated a little bit like nurses were in the hospitals at that time. Could that have been something that you could have requested in the process, the administrative process, in meeting with them and discussing it? The hearing officer has no authority to grant that a school district provide in-person or the Virginia Department of Education provide in-person services. And that's the crux of this argument. And that's why it is so crucial. Because these children faced developmental delays and regression that they will never get back. I guess, I'm sorry, why couldn't an administrative officer, not under these circumstances, have said, okay, fine. It's not relief granted under IDEA. They do not have the ability to force a school district to provide in-person services. Well, maybe not as a general matter, but I guess I'm just not seeing. You think it's a reasonable argument, treat the teachers like nurses and send them in just under these emergency circumstances. I guess, what are you citing me to for the proposition that the hearing officer could not have considered that? Because the OCR stated that the children had rights to receive their services as written and implemented in their IEP. That's why maybe you should have. That is answering the other question. Now you're telling me why an administrative officer should have been able to order the teacher to go to that one. No, I'm saying they cannot. They do not have the ability. If they cannot, then what relief are you going to get? I mean, you're sort of cutting yourself out of any potential relief in court. That's why we needed the federal courts to do an injunctive relief. Because that's not something. I just want a citation. If I'm trying to think about this like someone might write about it. What is the citation that I use for we could not raise this? Is there a law or something? I really don't know. Well, first of all, if you're talking about exhaustion, why it would not fall under typical exhaustion. Just asking. I only have one question, and I bet there's a really obvious answer. I just want you to clarify. You say a hearing officer would not have had the authority under the law to order the in-person visits we needed as sort of an extreme response to an extreme situation. That could not have been done. And then what's the citation for that? So under IDEA, if you just want to talk about what it states, what the relief is that you can get. Compensatory education. Why isn't that compensatory education? Because that's for the failure to provide the FAPE. But you're saying they're not providing a FAPE because they're at home and they can't get the learning they need. I don't understand why this wouldn't fall within normal compensatory educational services. Judge Harris, I'm sorry if I'm not being clear. I'm trying to clarify this. So compensatory education addresses the failure of the school board to provide the student with an education. It's backwards looking. We're stating you shouldn't fail them in order for us to have to go back and have regression that's irreparable for a student to get their services under their IEP. You're missing the question. The question is why can't a hearing officer provide that remedy that you're requesting? Because they cannot. And you said they can't. And all we wanted was the citation that says a hearing officer doesn't have that authority. Under IDEA, a hearing officer cannot dictate to a school board that they provide in-person services. They can only give... Where does it say that? Is that in the law somewhere? It like states what is relief under IDEA. So your argument hinges on the premise that under these circumstances, in-home or in-person education could not have been considered a compensatory educational service. That's your argument. It would be something that would not prevent the harm in the first place which we were trying to do. We're not trying to compensate a student that now you're two years behind in reading. Now you can't speak properly. That you can get compensatory services for that. We wanted to say please don't fail these students by not implementing the services as written in their IEP. What can the hearing officer do? I mean why do you go through the process? That's the whole point of... There's the exception to exhaustion because they cannot... The hearing officer cannot provide the relief. That's why we're saying the... What can the officer provide in that context? Okay. They can provide a private placement, a change in placement. They can provide compensatory education. And they cannot say that a child should have in-person services. That's not within the realm of what a hearing officer can implement. Plus under exhaustion also... So if they can't do it and you're asking us to order them to do it? No, we're asking you to do an injunction that if there's... But how can you... If you concede that they can't do it, why would a court be able to do it? You would be able to dictate that if there is a change in placement that they would implement the IEP as written. Can I... So it's like... I am not... You said it's not written to do that. You said it doesn't let you do that. I don't know if I'm understanding your question. Let's say we have an IEP. It says the students should have 30 minutes of occupational therapy in-person a day. It should be a push-in or push-out. And then say that student, like, breaks his leg and he's going to be home for a couple of weeks. You're saying there's under no circumstances could a hearing officer say, I guess the physical or occupational therapist is going to have to go to the kid's home for a few weeks. The hearing officer could determine that there's been a change in placement. The hearing officer could say that the school district did not provide the student an education if they didn't receive the services. So say it's day two, he's still home with his broken leg. On day one, he didn't get the services. He can't go to a hearing officer and say, make the person come to me. Correct. That's... Well, let me ask you this. I have this problem then. If you can't get the relief of having personal visits, that's what you told me that these children should have been getting during COVID.  And if a hearing officer cannot order that, how can we order it? Because that would be injunctive. What authority do we have under IDEA? Like in the D.C. case, the children were in jail. They were not getting in-person services. The court ordered, go in and provide the services because otherwise they are not going to be getting their services as written in an IEP. But that was not an administrative level... How about you told me that IDEA doesn't authorize providing for in-person visits? The IEP, the hearing officer cannot compel a school district to do something. What's the next step after the hearing officer? You have a hearing, don't you? So if you lose at the administrative level, you have a choice of going to state or federal court to appeal. Isn't there another process after the hearing officer? There's no SRO in Virginia. So the hearing officer is your exhaustion area. Yes. And you're saying the hearing officer did not have authority to give you the relief you wanted. Yes. But yet you're saying we have the authority. Because you can give injunctive relief as the court did in D.C. But we need to have substantive authority for injunctions. We have to order somebody to comply with the law and you say the law doesn't require that. No, we said the law didn't require exhaustion of the administrative... No, I'm talking about individual visits. You want us to order individual visits to these students and you say a hearing officer cannot order it because IDEA does not provide for that. Your Honor, if I may just add one more point. Can you just answer my question? I am going to answer it, Your Honor. Just one more point. So also in terms of futility and the inadequacy, if you have thousands of students that all need in-person services, that would flood the administrative hearing officers and there would be no way for administrative hearing officers to grant in-person services to thousands of children. That's why we were asking for the relief that we did. The statute does not authorize a hearing officer to provide in-person visits. No. Well, I mean, they can say the failure to do it was a denial of faith, but they cannot force or enjoin... So my question is where do we get the authority under the statute to order what the hearing officer couldn't order? You get it under a preliminary injunction. That's the remedy. The question is what's the substance that authorizes us to order them to have in-person if the statute doesn't authorize that? That there is a right to have your procedural and substantive safeguards protected under the IDEA through the IEP. I mean, if the statute does not authorize a person with a disability to have a Cadillac chauffeured trip to school every day, would we have authority to impose injunction and say you have to do a Cadillac service trip to school every day? IDEA provides procedural and substantive safeguards for parents through the IEP, which is... You answer so generally. I'm asking you particularized hypotheticals, and you keep ducking it with some generalized thing. My question is you... I mean, this is my last chance, and I'll be quiet then and give you a minute. If the hearing officer has no authority to order in-person visits because it's not provided in the statute, where would a court get the authority to order that? So there's a violation of a procedural and substantive right that's causing irreparable harm. So you're being general. I want you to know, can I order personal visits to all the students? I would believe that the court has the ability to order the provision of the enforcement of the IEP as written to provide the in-person services. I thought you said IEP doesn't authorize that. That's exactly what you said. If the IEP, if it did authorize that... No, I said IEP, not IDEA. I'm sorry. Was there a confusion in what I stated? All we have to decide is whether Judge Boone was right or wrong. So the district court erred. We are saying that the district court erred by stating that we failed to show the disparate impact. Well, that disparate impact is under discrimination statute, which we're not addressing anymore. All right, we've gone quite a bit beyond. We'll adjourn court sine die and come down and greet counsel. This honorable court stands adjourned sine die. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Robert B. King, Pamela A. Harris